STOKER, Judge.
Plaintiffs here sought to enjoin defendant from promoting and participating in any way in a shopping center venture in the Town of Marksville, Louisiana. The trial court denied injunctive relief. The plaintiffs appealed.
In their petition plaintiffs reserved their right to seek damages resulting from plaintiffs’ alleged actions, but all the trial court had before it, and all we have before us, is the question of whether plaintiffs are entitled to injunctive relief.
FACTS
A detailed narrative of facts and recounting of procedural steps is necessary to establish the issue and considerations we have before us. First it is necessary to note that the only parties before us are natural persons. The suit was brought by Ira J. Schneider and his wife, Bertha Louise C. Schneider, who are the owners of a shopping center in Marksville, Louisiana, known as Place du Marche. Plaintiffs purchased Place du Marche from defendants, Charles M. Gremillion and Mercedes Grem-illion, who developed this shopping center. The active parties appear to be Ira J. Schneider and Charles M. Gremillion, and any reference in this opinion to Schneider or Gremillion should be taken to refer to them.
There is pending in this case an exception filed by the defendants urging that two entities are indispensable parties to this injunction matter, namely, Charles M. Gremillion Construction Co., Inc. and Tuni-ca Village Partnership (Tunica). The trial court heard the injunction matter and denied the injunction without deciding the exception of indispensable parties.
Charles M. Gremillion is in the business of promoting, developing, constructing, selling, owning and operating shopping centers. Gremillion owns a corporation whose primary, if not sole, purpose is to construct the buildings which make up *1101 shopping centers in which he has an interest or with which he is connected. Gremil-lion also has a shopping center management company. At the time of trial of the injunction matter, Gremillion had built ten or eleven shopping centers; he owned two centers and managed one center in addition to the ones he owned. Besides • constructing, owning and managing shopping centers, Gremillion apparently has an expertise for promoting shopping centers, obtaining desirable commercial tenants, putting up the buildings and selling such centers to buyers who acquire a nearly going concern upon purchase.
This last mentioned procedure is more or less what happened in the case of Place du Marche. Gremillion developed it and plaintiffs bought it. In the instrument of conveyance Schneider inserted the following agreement not to compete with Place du Marche:
“Vendor agrees that he shall not directly (or indirectly through a corporate entity, interposed party, employer or otherwise), construct, operate or own any commercial rental buildings which would be in direct competition with the Place du Marche Shopping Center within the corporate limits of the Town of Marksville, Louisiana, or within three miles thereof for a period of twenty years from the date hereof.”
Gremillion, who is an attorney, read and accepted the provision, and it became a part of the signed contract. Invoking this provision, the Schneiders seek to enjoin the Gremillions (Gremillion and his companies primarily) from involving themselves in the creation of another shopping center in Marksville which Tunica Village Partnership purchased from the Gremillions and which, at the time of the injunction hearing was under construction by Charles M. Gremillion Construction Company, Inc. under a contract with Tunica.
It is undisputed that Gremillion purchased three tracts of land in Marksville, presumably contiguous, consisting of 12.58 acres, 7.681 acres and 5.861 acres. The tract sold to Tunica Village Partnership is described as 5.861 acres, although Gremil-lion testified that parts of two tracts were sold to the' partnership. In any event, there appears to be no dispute as to the fact that the Gremillions own some part of the original three tracts on which there could be further shopping center development.
Prior to sale of a package deal by the Gremillions to Tunica Village Partnership, Gremillion sought strategic leases with retail firms and actually obtained leases from a well-known grocery chain and a well-known pharmacy chain. Such leases would encourage other tenants to consider taking space in the projected shopping center. Schneider was aware of what Gremillion was doing. Conceiving the new center to be a threat to the businesses operating in Place du Marche, Schneider negotiated with Gremillion proposing that he, Schneider, purchase the new shopping center package. Although Schneider thought he had negotiated an agreement to purchase the new shopping center, the Gremillions sold the package to Tunica Village Partnership on March 23, 1984. Plaintiffs learned of the sale to Tunica almost immediately.
Gremillion testified that he had no interest in Tunica Village Partnership and had no agreement with that company to manage the shopping center once it began operations. Charles M. Gremillion Construction Company, Inc. began construction of the shopping center under a contract with Tunica in April of 1984. Plaintiffs filed their suit shortly thereafter, but no date of filing is shown on the petition contained in the record. On May 5, 1984, the Gremillions filed their exception urging that plaintiffs should be ordered to join as defendants Charles M. Gremillion Construction Company, Inc. and Tunica Village Partnership, and in .default of doing so, that plaintiffs’ petition should be dismissed.
Plaintiffs’ petition did not specify the type of injunctive relief they desired, but on June 4, 1984 plaintiffs filed in this suit a motion and rule for a preliminary injunction. On June 25, 1984, the trial court heard the rule for preliminary injunction, *1102 admitted evidence and orally ruled on the matter. As previously noted, the trial court denied the preliminary injunction. From this denial plaintiffs appealed. The record was lodged in this Court of Appeal on July 13, 1984.
Because of the extraordinary case load and backlog of appeals and writ applications received by this Court, the appeal in this cause could not be scheduled until September 4, 1985. The only evidence in the record before us is the evidence taken on trial of the rule for preliminary injunction. At that hearing Gremillion testified that the construction work on Tunica’s shopping center should be completed within three to four months of the hearing date, which would mean that construction would have been accomplished by the end of October, 1985, if Gremillion’s estimate held true.
RULING OF THE TRIAL COURT
On trial of the rule for preliminary injunction various issues were raised, including some consideration as to whether it was appropriate for the court to proceed without the alleged indispensable parties being before the court. Among its defenses defendants urged that no consideration had been given in the Place du Marche sale for the noncompetition clause upon which plaintiffs base their case.
In the trial court’s oral denial of the preliminary injunction, it is not clear how it ruled on the absence of consideration issue. It reached the point of finding that plaintiffs had made a showing that they would probably prevail on the merits of the case, but it held that plaintiffs had not shown the necessary irreparable injury as a prerequisite to the issuance of a preliminary injunction. The trial court thought plaintiffs could be given appropriate relief and remedy through an award of any damages they might establish in trial on the merits.
ACTION ON APPEAL
On the day before this case was docketed for oral argument, defendants filed in this Court of Appeal a motion to dismiss the appeal on the ground that the question on appeal had become moot based upon an allegation in the motion that the subject shopping center (belonging to Tunica Village Partnership) had long been completed. Defendants further urged that the case should be remanded to the trial court for trial on the issue of damages alone. In this connection defendants’ motion refers us to the case of J. Weingarten, Inc. v. Northgate Mall, Inc., 404 So.2d 896 (La.1981).
Plaintiffs filed an opposition to the motion to dismiss the appeal in which they admit that the construction of the shopping center is complete and that several store locations in the shopping center are tenant-occupied and are in full operation. Plaintiffs allege in their petition that they do not seek demolition of the construction completed. This position was repeated orally through counsel before this Court at the hearing on appeal. However, plaintiffs earnestly urge that we should make a ruling on the appeal, because there is a serious threat that defendants will repeat their violation of the noncompetition clause through development of the remaining undeveloped land not within the acreage sold to Tunica.
The text of plaintiffs’ opposition to the motion to dismiss the appeal is included as a part of this opinion in Appendix A attached to this opinion.
ARGUMENT ON APPEAL
In summary plaintiffs argued on appeal that their petition for injunctive relief and their rule for preliminary injunction is broad and encompasses, not only the construction which was begun in April of 1984 for Tunica, but any further development that the Gremillions may have in mind for the remaining property not sold to Tunica. Plaintiffs also urge that the evidence taken on trial of the rule sufficiently indicates that the Gremillions do plan to develop the remaining property as a shopping center. Additionally, plaintiffs fear that Gremillion will undertake to manage the Tunica shopping center operation.
*1103 CONCLUSION
In its oral reasons for judgment the trial court based its denial of the preliminary injunction on the conclusion that no useful purpose would be served. The injunction could only run against the Gremillions, as Charles M. Gremillion Construction Company, Inc. and Tunica Village Partnership were not before the court. Even if the construction could be enjoined as to the corporation because Gremillion and the corporation were one and the same, the court reasoned that such an injunction would not halt Tunica from engaging another contractor to complete construction.
Inasmuch as plaintiffs have admitted that the injunction question as to construction of Tunica’s shopping center is moot, none of the specific factual issues as to that construction are before us.
With reference to plaintiffs’ argument that their appeal is still viable as to the undeveloped land owned by the Gremil-lions, we have examined the plaintiffs’ pleadings and the evidence taken at the preliminary injunction hearing. In their petition plaintiffs do describe the entire property purchased by the Gremillions consisting of three parcels. However, we do not find that the pleadings set forth any allegations, however broadly construed, to the effect that the Gremillions propose to violate the noncompetition clause in question with reference to any property other than that involved in the development sold to Tunica. We do not find any suggestion of any active intent to develop the remaining property. Considering the Gremillions’ business is shopping center development, there is a strong indication that they may have future shopping center development in mind. In fact, a plat in evidence shows the total property is divided into parcels designated as Phase I, Phase II and Phase III. The property described in the sale to Tunica is said to represent the property included in Phase I. Examination of the plat discloses this is apparently true.
With reference to the allegation that Gremillion proposes to manage Tunica’s center, Gremillion specifically denied there was an agreement for him to do so. What may have happened is not before us.
Despite the facts discussed above, and based on the present record, we regard any plans the Gremillions may have for future use of undeveloped property as speculative. It could just as well be developed as office space or doctors clinics which would not fall within the noncompetition clause. Moreover, it could just as conceivably never be developed or it could be sold as undeveloped land by the Gremillions. The point is that the record before us does not sufficiently indicate contemplated action by the Gremillions which would require us to consider reversing the trial court and granting injunctive relief at the appellate court level with reference to the undeveloped land belonging to the Gremillions.
For us to make any determination of the issues involved in the initial appeal, now that those issues as to Tunica’s shopping center are entirely moot, would amount to our making a declaratory judgment consideration. We understand plaintiffs’ desire to have an expression on the validity of the noncompetition clause from this appellate court. It is our understanding that plaintiffs’ rights under the noncompetition clause are, or will be, pursued in litigation at the trial court level of any damages plaintiffs may have sustained as a result of Gremillions’ promotion and development of the shopping center package sold to Tunica and its construction by Charles M. Gremil-lion Construction Company, Inc. Plaintiffs’ interest in having this Court of Appeal rule on its rights under the noncom-petition clause of its contract with defendants is sharpened by the realities and delays of present appellate procedures. Unfortunately, no matter how the trial court may rule on the issue in the damage phase of the litigation, a further appeal to this Court would probably involve an additional delay of fourteen to sixteen months in view of our present work load. While we appreciate plaintiffs’ position, we cannot afford them relief at this juncture and at this level of our court structure.
*1104 We specifically do not pass on any issues relating to the noncompetition contract. In its considerations made on the rule for preliminary injunction, the trial court dealt only in probabilities and because injunctive relief to hold the status quo was all that was before this Court. Consequently, we leave it to the trial court to first rule on all issues on which the claim for damages shall rest.
As we find that the appeal taken from the trial court’s ruling denying a preliminary injunction involved action now accomplished, because plaintiffs seek no removal or destruction of the buildings in Tunica Village Partnership’s shopping center, and because there is no proof in the record that Gremillion is managing or will manage the center, the appeal is moot and will be dismissed at appellants’ costs.
DISMISSED.
APPENDIX A
I.
Article I of the petition is admitted except that same is incomplete. The injunction sought herein is additionally for the purpose of restraining the defendant directly or indirectly from operating, owning or constructing any commercial rental buildings in direct competition with the Place Du Marche Shopping Center within the Corporation Limits of the Town of Marks-ville, Louisiana or within three miles thereof.
II.
Respondent admits the completion of construction of several stores in a shopping center which are tenant occupied and in full operation; denies knowledge that the defendant is operating or is not operating or managing this project; alleges further that the defendant owns considerable additional land in and adjacent to the existing buildings but which would include the shopping center area upon which buildings could be constructed in the future.
III.
Article III of the Motion is denied. Plaintiffs-Appellants allege that they fear that the Defendants-Appellees will continue their complete disregard of the terms and conditions of the contract forming the basis of this suit and will construct additional buildings; will attempt to manage the existing Shopping Center and will otherwise violate the terms of this agreement in the future.
IV.
Plaintiffs-Appellants have in fact filed a suit for damages, having reserved their claim and accordingly, this portion of Article IV of the Motion To Dismiss Appeal is admitted. However, Plaintiffs-Appellants continue to fear additional construction and the potential management of this facility by the defendants-appellees, present a threat and would be to the detriment of Plaintiffs-Appellants. The fact that defendants have previously disregarded their agreement is a real basis for fear that they will continue to do so.
V.
In answer to the legal proposition presented in the allegation of Article V, plaintiffs-appellants show that in spite of the utter and complete disregard of the terms of the contract by the defendants-ap-pellees, they do not request or would not require an order causing the demolition of the existing buildings in the Shopping Center but would, nevertheless, insist that an injunction be granted which would in effect restrain any additional construction of the Shopping Center and which would enjoin the defendants-appellees from further violating their contract by operating, owning or constructing any additional buildings in said Shopping Center or from operating or owning the existing rental buildings in the Shopping Center.
WHEREFORE, PLAINTIFFS-APPEL-LEES PRAY That the Motion To Dismiss Appeal be denied at the costs of DEFENDANTS-APPELLEES.